# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTHA ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action Number** |
| **v.** | ) | **2:18-cv-01134-AKK** |
| | ) | |
| **HARTFORD LIFE & ACCIDENT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Martha Allen filed this lawsuit against Hartford Life and Accident Insurance Company, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1101 *et seq.* Doc. 1. Allen contends that Hartford wrongfully denied her long-term disability ("LTD") benefits due to its duplicative requests for documentation, breach of fiduciary duty, bad faith, conflict of interest, and inability to provide a full and fail review. *Id.* at 5-18. Before the court is Hartford's motion to dismiss, or in the alternative, motion for summary judgment, doc. 7. The motion, which is fully briefed, docs. 14 and 15, and which the court addresses as one for summary judgment, is due to be granted.

1

# I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Although "the law is less clear as to what requirement governs when considering dismissal for failure to exhaust administrative remedies in an ERISA case," the Eleventh Circuit has affirmed district courts' decisions on ERISA claims and exhaustion requirements under both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. *See, e.g. Davis v. Prudential Ins. Co. of Am.,* No. 2:14CV43-MHT, 2018 WL 3094885, at *2 (M.D. Ala. June 22, 2018) (affirming dismissal of ERISA claim for a failure to exhaust under Rule 12(b)(6)) and *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (same under Rule 56).

In light of both parties submitting evidence and affidavits in support of and opposition to Hartford's motion,[1] the court considers this matter pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure.  *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment" once the court looks at matters outside of the pleading).  Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no

---

[1] After Hartford attached 120 pages of evidence in support of its Motion to Dismiss, doc. 7, Magistrate Judge John E. Ott notified the parties that the court "intends to treat the motion as one to dismiss under Rule 12(b)(6) or alternatively for summary judgment under Rule 56" and that "[Allen] shall file any opposition or other response, including any evidence," doc. 8.  Allen subsequently attached 230 pages of evidence in her response, doc. 13, and asked the court to address the motion as one for summary judgment in light of the "competing submissions by the parties." Doc. 14 at 5.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's

favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

Allen worked as an insurance claims adjuster for Infinity Property and Casualty Corporation until 2017 when she stopped working due to various medical ailments. Docs. 1; 13-1 at 59; 13-3 at 5-20. Thereafter, Allen applied in March 2017 for disability benefits through Infinity's Hartford-sponsored policy. Doc. 7-1. In April 2017, Hartford found Allen eligible for short-term disability ("STD") benefits, which it deemed to be "not payable beyond June 28, 2017." Doc. 7-4. Sometime in June, Hartford began a concurrent review of Allen's eligibility for LTD benefits and notified Allen that this inquiry would require a separate approval process. *Id.*

During this period, the parties engaged in a flurry of correspondence regarding requests for and supplements to Allen's medical record. *See* docs. 7-1

through 7-14 and 13-1 through 13-5. Eventually, in September 2017, Hartford informed Allen of its decision to terminate her LTD benefits due to Allen's failure to provide proof of her ongoing disability and her "lack of response and lack of medical information." Doc. 7-3 at 1. Hartford also notified Allen that she may "perfect her claim" by providing the necessary information, or "if [she is] unable to or do[es] not wish to provide the requested information, [she] may appeal submit an appeal of [the] decision to the Appeal Unit." *Id.* at 4-5. Allen, through her attorney, contacted Hartford's Appeals Unit in January 2018. The correspondence relayed Allen's intent to revoke Hartford's access to the HIPAA authorization she previously provided, her decision to appeal the adverse LTD determination, and her submission of additional medical information Hartford previously requested. Doc. 7-5.

A month later, the Appeals Unit acknowledged receiving Allen's letter and documents, but construed the submission as a response to perfect the denied LTD claim. Consequently, the Appeals Unit "forward[ed] [Allen's] letter and attachments to the Maitland Claim Office" for further evaluation of her claim in light of additional materials which appeared in response to prior requests for documentation. Doc. 7-6. Thereafter, Tameka Caldwell, a senior disability analyst in the Maitland Claim Office, noted the receipt of the documents included in "Allen's request for an appeal," and requested additional information from Allen,

including past and present neuropsychological exams, as well as medical records from Dr. Aaron Fobian who had treated Allen since March 2017. Doc. 7-7. Allen's attorneys subsequently provided updated medical records from various physicians, including Dr. Fobian. Counsel also inquired about Hartford's delay in reinstating Allen's benefits, contending that their submission of additional documents fully addressed the grounds for the denial of the claim. Doc. 13-2 at 41.

Hartford responded that it initially denied the LTD claim due to incomplete records and that "an appeal is not necessary at this time until a decision is made." Doc. 7-8. Hartford also informed counsel of the difficulties it had in obtaining a "neuropsychological evaluation documented in the medical records." Doc. 7-8. Nearly a month later, Hartford warned that it would make a determination on the LTD claim based on the records it had received, which might result in a denial, and inquired again about the missing medical records, including past and present neuropsychological exams and Dr. Fobian's mental health records. Doc. 7-9. In response, Allen's attorneys sent additional records they had recently received from Dr. Fobian. Doc. 13-3 at 34. The submission proved incomplete, however, causing Hartford to respond that Allen's LTD claim remained under review because its clinical staff needed Allen's neuropsychological exams. *Id.* at 45. Hartford explained a few days later that while it understands that Allen did not

want to undergo a new neuropsychological exam, it needed a copy of the 2016 exam. Doc. 7-10 at 1. Counsel for Allen refused to provide the 2016 neuropsychological exam, stating that "it is not relevant as to whether Ms. Allen is disabled as of the date this benefit is to commence" and "precedes the date of disability for the STD claim which was paid." Doc. 13-3 at 51. Counsel also explained that Allen would not answer the request for more assessments and that they expected to receive a timely determination on Allen's claim. *Id.*

Thereafter, Hartford requested a list of Allen's current treatment providers, attending physician's statement, and neuropsychological evaluation reports. Doc. 7-11 at 2. Allen's attorneys responded with a request for clarification on what additional information Hartford needed to review the LTD claim. Doc. 13-3 at 56. The following day, Hartford explained that it needed a list of Allen's past and current treatment providers and that if Allen refuses to provide the information, she "may submit an appeal to the Appeals Unit at the time a decision is made based on the information currently in the claim file." Doc. 7-12. Counsel for Allen responded that they had already provided a list of Allen's medical providers. Doc. 13-3 at 61. Roughly a month later, counsel expressed concern over the "endless cycle" of document requests in the six months since Allen submitted documentation for her LTD claim and asked Hartford to explain why Allen should not file a lawsuit. *Id.* at 62. The following day, Hartford notified Allen that it "has

completed [its] review of her claim for benefits and [has] determined that [it is] unable to complete [the] investigation. Because of this, [it] must deny her claim." Doc. 7-13 at 1. Hartford explained that Allen may perfect her claim by providing the necessary information or she may appeal the decision. *Id.* at 5. Allen filed this lawsuit in response. Doc. 1.

## III. ANALYSIS

Although ERISA does not include an exhaustion requirement, the Eleventh Circuit strictly enforces this requirement with narrow exceptions for exceptional circumstances, such as where the administrative scheme is unavailable, futile, or fails to offer an adequate legal remedy. *Perrino*, 209 F.3d at 1315. Exhaustion is not excused even for "technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy." *Id.* at 1317. As the Circuit puts it, "[a]dministrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision-making process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." *Mason v. Cont'l Grp., Inc*., 763 F.2d 1219, 1227 (11th Cir. 1985). Consequently, "if a reasonable administrative scheme is

available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit." *Id*. Ultimately, the plaintiff "must carry the burden of proof, demonstrating that [s]he is entitled to recover under ERISA's civil enforcement provision" and that she "exhaust[ed] [the] administrative claim and appeal procedures available under the pension and severance plans and must plead exhaustion before filing suit to obtain relief under ERISA." *Goldstein v. Kellwood Co.,* 933 F. Supp. 1082, 1087–88 (N.D. Ga. 1996) (citing *Byrd v. MacPapers, Inc.,* 961 F.2d 157, 159 (11th Cir. 1992)).

Hartford argues that Allen failed to exhaust her LTD claim. Doc. 7 at 1. Allen counters that her claim is ripe for judicial review because (1) Hartford's September 9, 2017 denial letter was an adverse determination and entitled her to an appeal; (2) she filed and properly pursued a timely appeal in January 2018, which Harford failed to adjudicate; (3) Hartford failed to timely decide her appeal which resulted in a "deemed denial;" and alternatively, (4) even if Hartford properly tolled their decision, she exhausted her remedies because Hartford affirmed its September 2017 determination. Doc. 13 at 13-31. The court reviews each contention below.

## A. Whether Hartford's September 2017 Letter Entitled Allen to Appeal

In early September 2017, Hartford sent Allen a letter explaining that her "LTD benefits must be denied" because Allen's "lack of response and lack of medical information hindered [Hartford's] ability to determine whether" Allen satisfied the provisions of the LTD policy. Doc. 7-3. Allen maintains that this letter constituted an adverse benefit determination.[2] Doc. 14 at 7. Indeed, a review of the letter indicates that Hartford denied the claim and notified Allen of her rights to appeal. Doc. 7-3. This notification is consistent with the regulations, which require that the plan include the specific reason for the adverse determination, reference to the specific plan provision, description of additional material necessary to perfect the claim, and a description of the review procedures, including the right to file a civil action if the decision is affirmed. 29 C.F.R. § 2560.503–1(g).

Hartford is correct that it noted in the letter that because Allen lacked a "sufficient proof of loss to enable [Hartford] to determine [her] disability," Allen could "perfect" her claim by submitting the necessary and required information.

---

[2] An "adverse benefit determination" is in part:

> A denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, . . .

29 C.F.R. § 2560.503-1(m)(4)(1).

*Id.* at 5. However, in arguing that the letter was not a decision on the merits, doc. 15 at 6, Hartford overlooks that it explained that if Allen is "unable to or do[es] not wish to provide the requested information," she could "submit an *appeal* of [the] decision to the Appeals Unit" or she "may *appeal* [the decision] even if [she does] not have any additional information to send [Hartford]." *Id.* (emphasis added). Hartford also explained that it would review Allen's entire claim and any additional information received on appeal and that if it denied her claim again, Allen had the right to file a lawsuit. *Id*. at 6. Therefore, viewing the facts in the light most favorable to Allen, the letter serves as a basis for Allen to appeal.

## B. Whether Allen Properly Filed an Appeal in January 2018

Allen contends that she timely appealed in January 2018, when she sent a letter to Hartford indicating her intent to appeal. Doc. 13-2 at 25-27. To determine whether Allen properly appealed the decision, the court examines her policy. *Am. Dental Ass'n v. WellPoint Health Networks Inc*., 494 F. App'x 43 (11th Cir. 2012) (finding that plaintiff's failure to appeal in writing under the parameters set forth by the health care plan is not excused under futility). Here, Infinity's Benefit Plan indicates that Allen "must request a review upon written application within 180 days of receipt of claim denial if the claim requires [the company] to make a determination of disability." Doc. 7-14 at 16, 32. The policy states also that the right to file suit may be affected if Allen does not complete the appeal, noting that

the claimant must "appeal once to the Insurance Company for a full and fair review" and that the claimant "must complete this claim appeal process before [the claimant] file[s] an action in court." *Id.* at 32. A review of the record here establishes that Allen failed to complete the claim appeal process.

To determine when Allen properly appealed, the court turns first to the content of her letter, which indeed states Allen's intent to appeal. Doc. 7-5. However, in her letter, Allen also acknowledged that Hartford denied her claims in part because of missing records, and Allen submitted medical assessments from three doctors in response to Hartford's prior requests for medical records. Doc. 13-2 at 32-33; *see* doc. 7-4 (Hartford September 21, 2017 letter to Allen: "[W]e are trying to determine if you remain disabled . . . The Attending Physician Statement [and] All medical records for the period of 04/01/2017 . . . is necessary for us to complete our investigation of your claim."). Hartford contends that it never construed Allen's letter as an appeal because its Appeals Unit informed Allen that the documents received "appear in response to the [September 9, 2017] request" for more information and that it was "forwarding [Allen's] letter and attachments to the Maitland Claim Office" as a result. Doc. 7-6.

Allen's response to Hartford's letter and her actions thereafter supports Hartford's position. Specifically, two months after the Appeals Unit forwarded Allen's letter to the Maitland Office, counsel for Allen informed the Maitland

Office that "they are making available to Hartford additional updated medical records recently received for Ms. Allen," including January 2018 through March 2018 documents from Dr. Fobian. Doc. 13-2 at 41. Also, counsel indicated that these "records are in further response to the original basis for the termination of benefits," *id.*, suggesting that counsel was proceeding under the section of the denial letter inviting Allen to perfect her claim by submitting the information previously requested. This fact is also evident in counsel's correspondence with the claim's administrator of the Maitland Claim office rather than the Appeals Unit. This conduct and Allen's failure to file a lawsuit after 45 days elapsed from the date she submitted her January 2018 letter, which would have triggered a "deemed denial," belies her contention that she believed that she had a valid appeal pending during this period. 29 C.F.R. § 2560.503-1(l)(2)(i); *Hall v. United of Omaha Life Ins. Co.,* 741 F. Supp. 2d 1348, 1357 (N.D. Ga. 2010) (finding that the insurance company's "alleged delay in providing an initial claim decision does not trigger the deemed exhaustion provision" when the claimant "could have filed suit once the original deadline had passed").

Moreover, courts have held that a plan administrator's fiduciary obligation to "seek to get to the truth" may require it to conduct limited investigation or to request more information during the course of a benefit determination. *See Gaither*

*v. Aetna Life Ins. Co.*, 394 F.3d 792, 807–08 (10th Cir. 2004)[3]; *see also Gilbertson*, 328 F.3d at 636 (stating that an administrator can be in "substantial compliance" with ERISA regulations when review extends beyond stated deadlines if the administrator is engaged in "an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed"). Indeed, Infinity's Plan states that Hartford may "request Proof of Loss throughout Your Disability, as reasonably required." Doc. 7-14 at 17. Allen has failed to demonstrate how Hartford's request for medical records, her partial responses to supplement her record, and her outright refusal to provide neuropsychological assessments supposedly "relates in any way to the reasonableness of [Hartford's] claims procedures or [Allen's] ability to exhaust their administrative remedies." *RMP Enterprises, LLC v. Connecticut Gen. Life Ins. Co*., No. 9:18-CV-80171, 2018 WL 6110998, at *4 (S.D. Fla. Nov. 21, 2018) (frustration with the alleged "retaliatory" request for medical records does not excuse "[the claimant's] obligation to exhaust their administrative remedies before filing ERISA claims").

Also, Allen's actions – in particular her outright refusal to provide requested information – and the specific requests she received from Hartford preclude a

---

[3] The Eleventh Circuit has found the Tenth Circuit's reasoning persuasive on ERSIA claims. *See Glazer v. Reliance Standard Life Ins. Co*., 524 F.3d 1241, 1245 (11th Cir. 2008) (noting that the Tenth Circuit is the "only other circuit court that has decided this issue reached the same conclusion" as the Eleventh Circuit on full and fair review under ERISA) (citing *Metzger v. UNUM Life Insurance Company of America*, 476 F.3d 1161, 1167 (10th Cir. 2007)).

finding that she attempted to exhaust her remedies despite purported "wild-goose chase" procedures. *Cf. Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475 (5th Cir. 2000) ("We agree that the lack of information and the behavior of various officials of the company led Bourgeois on a wild goose chase, effectively extinguishing his time to apply for benefits."); *Hutchinson v. Wickes Cos.*, 726 F. Supp. 1315, 1321 (N.D. Ga. 1989) (noting that when a plan's review apparatus "no longer exists" there is no need for a claimant to go through the formalities and resort to exhaust her administrative remedies). And, although a claimant may appeal a "refusal to process her claims absent" providing requested information, courts look at the policy to determine at what point the claimant may appeal their "denied" claim. *Springer v. Wal-Mart Associates' Grp. Health Plan,* 908 F.2d 897, 900–01 (11th Cir. 1990) (noting the "[p]lan's broad reference to 'some other decision' would not seem to limit the right of appeal to written decisions; in any event, the letters sent to Springer by Wal–Mart plainly constituted written notice to Springer of Wal–Mart's refusal to proceed further with her claims"). Here, the plan specifies that Allen must appeal to Hartford and complete the claim appeal process before filing a lawsuit. Doc. 13-1 at 33. Allen never completed the appeal process because after Hartford treated the January 2018 letter as a submission of previously requested information, correspondence from her counsel in the following months indicate an intent to continue to submit

documentation that the Maitland Office requested and deemed necessary to review the LTD claim. *See* docs. 7-7; 7-8; 7-10 at 1; 7-11 at 2; 7-12; 13-2 at 41; 13-3 at 34, 45, 51, 56, 61.

Finally, to request a determination of her future eligibility, doc. 1 at 18, Allen "must first be deemed not 'Totally Disabled' and that decision must then be administratively reviewed by [the insurance company]." *Peer v. Liberty Life Assurance Co. of Bos*., No. 18-13173, 2019 WL 494839, at *2 (11th Cir. Feb. 8, 2019) (citing *Heimeshoff v. Hartford Life Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("A participant's cause of action under ERISA . . . does not accrue until the plan issues a final denial.")). Without an adverse benefits determination based on the merits of her claim, "there is no ripe claim before [the court]," making it impossible for the court to "adjudicate [Allen's] disability status in the future." *Peer*, 2019 WL 494839, at *2. And, Allen has not demonstrated the exceptions to the exhaustion requirement, such as futility, denial of meaningful review, or inadequate administrative remedy. *See, e.g. Am. Dental Ass'n*, 494 F. App'x at 46 ("The requirement of exhaustion may be excused if resorting to the administrative remedies would be futile" and ultimately the claimant must "prove futility."); *Springer,* 714 F. Supp. at 901, 1176 (noting "that Springer never pleaded futility, the issue was not raised in the pretrial order, and no evidence was offered to demonstrate futility").

For all these reasons, Allen has failed to establish that she properly pursued an appeal in January 2018.

### C. Whether Hartford's Failure to Timely Adjudicate is a Deemed Denial for the Exhaustion Requirement

Allen contends next that Hartford failed to issue a timely decision on her appeal, citing language in her plan that the "insurance company will make a final decision no more than 45 days after it receives your timely appeal . . . [and that this time] may be extended for one additional 45 day period provided that . . . the Insurance Company notified you in writing that an extension is necessary due to special circumstances." Doc. 13-1 at 33. Allen is generally correct that if a plan fails to "establish or follow claims procedures consistent with" ERISA regulations, "the claimant . . . shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies . . . on the grounds that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503–1(1). ERISA regulations also mandate that "[a] plan administrator may seek a 60–day extension for the appeal process if special circumstances require additional time for review." 29 C.F.R. § 2560.503–1(i)(1)(i). Indeed, the Eleventh Circuit has found that the "failure to respond further within the required sixty-day time frame was an implicit denial of the appeal." *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 992 (11th Cir. 2001), *implied overruling recognized*

*by Doyle v. Liberty Life Assur. Co. of Bos.,* 542 F.3d 1352 (11th Cir. 2008). Here, however, the court rejects Allen's contention for the following reasons.

First, one month after Allen submitted her appeal, Hartford clearly indicated that it had forwarded her claim to the Maitland Office for further processing. Doc. 7-6. Allen has offered nothing to rebut Hartford's contention that the Appeals Unit never formally reviewed her appeal in light of this decision. Moreover, Allen engaged with the Maitland Office by sending information that Hartford had requested previously, which undermines her contention that she believed her claim was being reviewed by the Appeals Unit. *See* Subsection B, *supra.* Also, Allen waited four months to request a status update on her purported appeal, and continued thereafter to submit information necessary for Hartford to complete its review of her initial claim. Doc. 13-2 at 41. In light of this delay and Allen's submission of documents in response to requests from the Maitland Office, Allen has failed to demonstrate that she maintained her appeal and thus was entitled to a determination within 45 days.

Second, in the absence of a proper appeal, "[t]here was accordingly nothing for Hartford to consider on appeal, and no basis to require Hartford to issue its decision in writing 45 days after it received the written request." *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009) (internal citation omitted). Allen's January 2018 appeal included her concession

that she was submitting documents Hartford previously requested and stated it needed to complete its initial determination of her benefits, implying that she also intended to perfect her claim. Thereafter, she continued to send additional medical records as late as May 2018. *See id.* ("ascrib[ing] no fault to Hartford for failing to rule on the merits of the appeal, because [the court has] affirmed the district court's conclusion that there was no valid appeal on which to rule"). Moreover, "[i]f the claimant waits for the plan administrator to issue a determination, then the claimant should pursue the administrative route to its end." *Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1311 (M.D. Fla. 2009). This requirement is (1) "consistent with the purpose of the exhaustion requirement," (2) does "not impose an indefinite delay or permit an administrator to delay accrual of the right to sue," and (3) is "consistent with ERISA's deemed exhaustion provision." *Hall,* 741 F. Supp. 2d at 1357. In that respect, to the extent that Allen believed that she filed a proper appeal in January 2018, the delay in following up on her appeal and filing suit cannot be attributed to Hartford or trigger the "deemed exhaustion provision." *Id.*

Finally, Allen appears to "essentially argu[e] for a new exception to the administrative exhaustion requirement," in which a claimant can refuse initially to supply documents for administrative review to trigger a denial of benefits and then seek an appeal while submitting additional documents to perfect a claim. *Claxton,* 700 F. Supp. 2d at 1328–29. The court "is unwilling to extend the futility

exception . . . [because] the Eleventh Circuit has made clear that courts in this circuit shall apply the exhaustion requirement strictly, and shall recognize only narrow exceptions, based on exceptional circumstances." *Id*. (citing *Perrino*, 209 F.3d at 1315). Indeed, "[t]he very premise of the exhaustion requirement . . . is that the right to seek federal court review matures only after [the exhaustion] requirement has been appropriately satisfied or otherwise excused." *Springer,* 908 F.2d at 900. "Allowing [Allen's] filing suit to qualify as an excuse or a substitute for the exhaustion requirement would run contrary to its essence and intent." *Garrison v. Lincoln Nat'l Life Ins. Co*., 294 F. Supp. 3d 1281, 1295 (N.D. Ala. 2018). Therefore, in light of Allen's failure to put forth evidence that she properly pursued an appeal, Allen's argument that the lack of a response constitutes a deemed denial similarly fails. *See Waters v. AIG Claims, Inc.,* No. 2:17-CV-133-WKW, 2018 WL 2986213, at *4 (M.D. Ala. June 14, 2018) (noting that "there is no authority to support the conclusion that a deemed denial always constitutes the end of all claim administration").

### D. Whether Hartford's July 11, 2018 Letter Affirms Allen's Exhaustion of Remedies

Allen maintains lastly that the July 2018[4] letter denying her LTD claim for the second time is a ruling on her January 2018 appeal and entitles her to automatic

---

[4] The July 2018 letter denying Allen's LTD claim for a failure to provide necessary medical information explains the appeals process, in relevant part, as follows:

judicial review. Doc. 14 at 32. This contention is unavailing because, as an initial matter, there is no evidence that Hartford orchestrated a strategy to prevent Allen from pursuing a timely appeal or from accessing the courts. Viewing Allen's January 2018 letter in conjunction with the correspondence between the parties that continued until July 2018 reveals that Allen continued to submit documents to supplement Hartford's prior requests for more information to allow it to process her claim. *See Van Bael v. United Healthcare Servs., Inc.*, No. CV 18-6873, 2019 WL 142298, at *4 (E.D. La. Jan. 8, 2019) ("In assessing whether the administrator has substantially complied' with the applicable procedural requirements, the court must consider[ ] all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.") (internal citations omitted). Moreover, Allen's contention that Hartford's failure to rule on her initial appeal within 45 days allows her to now bypass the appeal process is also unavailing. As stated previously, Hartford sent a

---

If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from the later of receipt of the letter or the end of benefits. Your appeal letter should be signed, dated and clearly state your position . . . Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim . . . If you are unable to or do not wish to provide the requested [necessary] information, you may submit an appeal of our decision to the Appeals Unit.

Doc. 7-13 at 5.

letter to Allen shortly after the forty-fifth day requesting additional information, and Allen responded by submitting some of the information Hartford requested. *See* docs. 7-7; 13-2 at 41; 7-8. Thereafter, when Hartford explained that an appeal was not necessary at that juncture in response to Allen following up on the original basis for her benefits termination, Allen never rebutted this contention. Doc. 13-2 at 73. And later, when Hartford asked for Dr. Fobian's medical records, Allen's counsel sent "records from Dr. Fobian which [they] recently received from his office." Doc. 13-3 at 22.

Furthermore, as further proof that Allen knew that Hartford construed her January letter as a response to Hartford's request for information, rather than an appeal, counsel sent a letter to the Maitland Office expressing concern about Hartford's failure to make a decision, but also acknowledging that "Hartford had previously been waiting on some information from Dr. Fobian." *Id.* at 51. Finally, Hartford's continued requests for medical records were triggered by Allen's failure to submit necessary documentation, including past neuropsychological exams and records from physicians, including from her new treating physician Dr. Khurram Bashir. Docs. 15 at 10, n.1 and 13-2. Accordingly, the Maitland Office's July 2018 denial of Allen's claim is not a decision made on appeal because nothing in the record suggests that the Appeals Unit made a decision on the merits of Allen's appeal. *See also* 29 C.F.R. § 2560.503–1(c) ("[t]he claims procedures of a group

health plan will be deemed to be reasonable only if . . . [t]he claims procedures do not contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action . . .").

## IV. CONCLUSION

To close, in light of Allen's failure to properly appeal in January 2018, the court declines to exercise judicial review due to the important policies undergirding the exhaustion requirement, which is "strictly enforce[d] . . . on plaintiffs bringing ERISA claims in federal court with certain caveats [being] reserved [only] for exceptional circumstances." *Perrino*, 209 F.3d at 1315. Consistent with the July 2018 denial letter, remand of Allen's LTD claim to Hartford is warranted so that, if she is so inclined, Allen may respond to the outstanding medical requests to allow Hartford to complete its review and make a substantive decision on the merits of her LTD claim, which will then permit Allen to formally appeal an adverse decision. Alternatively, Allen may refuse to provide additional information and formally appeal the July 2018 denial so that Hartford may issue a decision on appeal from which Allen may properly file suit in this court pursuant to 29 U.S.C. § 1132(a). There is no prejudice to Allen because a "dismissal for failure to exhaust administrative remedies . . . is not a determination on the merits," *Hutchinson*, 726 F. Supp. at 1322, and "[t]he court will still be open

to [Allen] when [s]he has exhausted [her] appeals," *Amato v. Bernard*, 618 F.2d 559, 569 (9th Cir. 1980).

A separate order granting Hartford's summary judgment motion, doc. 7, and dismissing this case without prejudice will be issued.

**DONE** the 30th day of April, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE